**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**

| | | |
|---|---|---|
| ADAM HERRELL, individually, and on behalf of all others similarly situated, | ) | **Case No.** |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **[JURY TRIAL DEMANDED]** |
| | ) | |
| L & B TRANSPORT, LLC, | ) | |
| Defendant. | ) | Judge _____ |
| | ) | Magistrate Judge _____ |
| | ) | |
| | ) | |
| | ) | |

**CLASS ACTION COMPLAINT**

1.     Representative Plaintiff Adam Herrell ("Representative Plaintiff") brings this class action against L & B Transport, LLC ("Defendant") for its failure to properly secure and safeguard Representative Plaintiff's and/or Class Members' personally identifiable information stored within Defendant's information network, including, without limitation, names, Social Security numbers, and driver's license numbers (these types of information, *inter alia*, being thereafter referred to, collectively, as "personally identifiable information" or "PII").[1] All such information is referred to in the aggregate herein as "Private Information."

2.     With this action, Representative Plaintiff seeks to hold Defendant responsible for the harms it caused and will continue to cause Representative Plaintiff and thousands of other similarly situated persons in the massive and preventable cyberattack that occurred in August

---

[1]     Personally identifiable information ("PII") generally incorporates information that can be used to   distinguish or trace an individual's identity, either alone or when combined with other personal or  identifying information. 2 C.F.R. § 200.79. At a minimum, it includes all information that on its  face expressly identifies an individual. PII also is generally defined to include certain identifiers  that do not on its face name an individual, but that are considered to be particularly sensitive  and/or valuable if in the wrong hands (for example, Social Security numbers, passport numbers, driver's license numbers, financial account numbers, etc.).

2024, by which cybercriminals infiltrated Defendant's inadequately protected network and accessed the Private Information which was being kept under-protected (the "Data Breach").

3.     While Defendant claims the breach occurred as early as August 2024, Defendant did not begin informing victims of the Data Breach until November 11, 2024 and failed to inform victims of when or for how long the Data Breach occurred. Indeed, Representative Plaintiff and Class Members were wholly unaware of the Data Breach until they received letters from Defendant informing them of it. The Notice received by Representative Plaintiff was dated November 11, 2024.

4.     Defendant acquired, collected and stored Representative Plaintiff's and Class Members' Private Information. Therefore, at all relevant times, Defendant knew or should have known that Representative Plaintiff and Class Members would use Defendant's services to store and/or share sensitive data, including highly confidential Private Information.

5.     Defendant disregarded the rights of Representative Plaintiff and Class Members by intentionally, willfully, recklessly and/or negligently failing to take and implement adequate and reasonable measures to ensure that Representative Plaintiff's and Class Members' Private Information was safeguarded, failing to take available steps to prevent an unauthorized disclosure of data, and failing to follow applicable, required and appropriate protocols, policies and procedures regarding the encryption of data, even for internal use. As a result, Representative Plaintiff's and Class Members' Private Information was compromised through disclosure to an unknown and unauthorized third party—an undoubtedly nefarious third party seeking to profit off this disclosure by defrauding Representative Plaintiff and Class Members in the future. Representative Plaintiff and Class Members have a continuing interest in ensuring their information is and remains safe and are entitled to injunctive and other equitable relief.

## JURISDICTION AND VENUE

6.     Jurisdiction is proper in this Court under 28 U.S.C. § 1332 (diversity jurisdiction). Specifically, this Court has subject matter and diversity jurisdiction over this action under 28 U.S.C. § 1332(d) because this is a class action where the amount in controversy exceeds the sum or value of $5 million, exclusive of interest and costs, there are more than 100 members in the proposed class and at least one other Class Member is a citizen of a state different from Defendant.

7.     Supplemental jurisdiction to adjudicate issues pertaining to state law is proper in this Court under 28 U.S.C. § 1367.

8.     Defendant is headquartered and routinely conducts business in the State where this District is located, has sufficient minimum contacts in this State and has intentionally availed itself of this jurisdiction by marketing and selling products and services, and by accepting and processing payments for those products and services within this State.

9.     Venue is proper in this Court under 28 U.S.C. § 1391 because a substantial part of the events that gave rise to Representative Plaintiff's claims took place within this District, and Defendant does business in this Judicial District.

## PLAINTIFF

10.     Representative Plaintiff is an adult individual and, at all relevant times herein, was a resident and citizen of the State of Texas. Representative Plaintiff is a victim of the Data Breach.

11.     Defendant received highly sensitive Private Information from Representative Plaintiff in connection with the services Representative Plaintiff provided. As a result, Representative Plaintiff's information was among the data accessed by an unauthorized third party in the Data Breach.

12.     At all times herein relevant, Representative Plaintiff is and was a member of the Class.

13.     Representative Plaintiff's Private Information was exposed in the Data Breach because Defendant stored and/or shared Representative Plaintiff's Private Information. Representative Plaintiff's Private Information was within the possession and control of Defendant at the time of the Data Breach.

14.     Representative Plaintiff received a letter from Defendant stating Representative Plaintiff's Private Information was involved in the Data Breach (the "Notice").

15.     As a result, Representative Plaintiff spent time dealing with the consequences of the Data Breach, which included and continues to include, time spent verifying the legitimacy and impact of the Data Breach, exploring credit monitoring and identity theft insurance options, self-monitoring Representative Plaintiff's accounts and seeking legal counsel regarding Representative Plaintiff's options for remedying and/or mitigating the effects of the Data Breach. This time has been lost forever and cannot be recaptured.

16.     Representative Plaintiff suffered actual injury in the form of damages to and diminution in the value of Representative Plaintiff's Private Information—a form of intangible property that Representative Plaintiff entrusted to Defendant, which was compromised in and as a result of the Data Breach.

17.     Representative Plaintiff suffered lost time, annoyance, interference and inconvenience as a result of the Data Breach and has anxiety and increased concerns for the loss of privacy, as well as anxiety over the impact of cybercriminals accessing, using and selling Representative Plaintiff's Private Information.

18.    Representative Plaintiff suffered imminent and impending injury arising from the substantially increased risk of fraud, identity theft and misuse resulting from Representative Plaintiff's Private Information being placed in the hands of unauthorized third parties/criminals.

19.    Representative Plaintiff has a continuing interest in ensuring that Representative Plaintiff's Private Information, which, upon information and belief, remains backed up in Defendant's possession, is protected and safeguarded from future breaches.

## **DEFENDANT**

20.    Defendant is a for-profit corporation with a principal place of business located in Port Allen, West Baton Rouge Parish, Louisiana. Defendant is transportation company specializing in rubber-lined trailer service for strong acids and the transportation of commodities, including hazardous materials, in bulk across the United States and Canada.[2]

21.    The true names and capacities of persons or entities, whether individual, corporate, associate or otherwise, who may be responsible for some of the claims alleged here are currently unknown to Representative Plaintiff. Representative Plaintiff will seek leave of court to amend this Complaint to reflect the true names and capacities of such responsible parties when their identities become known.

## **CLASS ACTION ALLEGATIONS**

22.    Representative Plaintiff brings this action pursuant to the provisions of Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, on behalf of Representative Plaintiff and the following class (collectively, the "Class"):

---

[2]    https://www.landbtransport.com/ (last assessed Nov. 22, 2024).

**Plaintiff Class:**
"All individuals within the United States of America whose Private Information was exposed to unauthorized third parties as a result of the data breach by Defendant that allegedly occurred on or about August 2024."

23.    Excluded from the Class is the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors and any entity in which Defendant has a controlling interest, all individuals who make a timely election to be excluded from this proceeding using the correct protocol for opting out, any and all federal, state or local governments, including, but not limited to, its departments, agencies, divisions, bureaus, boards, sections, groups, counsel and/or subdivisions, and all judges assigned to hear any aspect of this litigation, as well as their immediate family members.

24.    In the alternative, Representative Plaintiff may request additional subclasses as necessary based, e.g., on the types of Private Information that were compromised.

25.    Representative Plaintiff reserves the right to amend the above definition or to propose subclasses in subsequent pleadings and its motion for class certification.

26.    This action has been brought and may properly be maintained as a class action under Federal Rules of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and membership in the proposed Class is easily ascertainable.

     a.    Numerosity: A class action is the only available method for the fair and efficient adjudication of this controversy. The members of the Plaintiff Class is so numerous that joinder of all members is impractical, if not impossible. Membership in the Class will be determined by analysis of Defendant's records.

     b.    Commonality: Representative Plaintiff and Class Members share a community of interest in that there are numerous common questions and issues of fact and law which predominate over any questions and issues solely affecting individual members, including, but not necessarily limited to:

1) Whether Defendant had a legal duty to Representative Plaintiff and the Classes to exercise due care in collecting, storing, using and/or safeguarding their Private Information;

2) Whether Defendant knew or should have known of the susceptibility of its data security systems to a data breach;

3) Whether Defendant's security procedures and practices to protect its systems were reasonable in light of the measures recommended by data security experts;

4) Whether Defendant's failure to implement adequate data security measures allowed the Data Breach to occur;

5) Whether Defendant failed to comply with its own policies and applicable laws, regulations and industry standards relating to data security;

6) Whether Defendant adequately, promptly and accurately informed Representative Plaintiff and Class Members that their Private Information had been compromised;

7) How and when Defendant actually learned of the Data Breach;

8) Whether Defendant's conduct, including its failure to act, resulted in or was the proximate cause of the breach of its systems, resulting in the loss of Representative Plaintiff's and Class Members' Private Information;

9) Whether Defendant adequately addressed and fixed the vulnerabilities which permitted the Data Breach to occur;

10) Whether Defendant engaged in unfair, unlawful or deceptive practices by failing to safeguard Representative Plaintiff's and Class Members' Private Information;

11) Whether Representative Plaintiff and Class Members are entitled to actual and/or statutory damages and/or whether injunctive, corrective and/or declaratory relief and/or an accounting is/are appropriate as a result of Defendant's wrongful conduct; and

12) Whether Representative Plaintiff and Class Members are entitled to restitution as a result of Defendant's wrongful conduct.

c.    <u>Typicality</u>: Representative Plaintiff's claims are typical of the claims of the Plaintiff Classes. Representative Plaintiff and all members of the Plaintiff

7

Classes sustained damages arising out of and caused by Defendant's common course of conduct in violation of law, as alleged herein.

d.    Adequacy of Representation: Representative Plaintiff in this class action is an adequate representative of each of the Plaintiff Class in that the Representative Plaintiff has the same interest in the litigation of this case as the Class Members, is committed to vigorous prosecution of this case and has retained competent counsel who are experienced in conducting litigation of this nature. Representative Plaintiff is not subject to any individual defenses unique from those conceivably applicable to other Class Members or the Class in its entirety. Representative Plaintiff anticipates no management difficulties in this litigation.

e.    Superiority of Class Action: Since the damages suffered by individual Class Members, while not inconsequential, may be relatively small, the expense and burden of individual litigation by each member makes or may make it impractical for members of the Plaintiff Class to seek redress individually for the wrongful conduct alleged herein. Should separate actions be brought or be required to be brought by each individual member of the Plaintiff Class, the resulting multiplicity of lawsuits would cause undue hardship and expense for the Court and the litigants. The prosecution of separate actions would also create a risk of inconsistent rulings which might be dispositive of the interests of the Class Members who are not parties to the adjudications and/or may substantially impede their ability to adequately protect their interests.

27.    Class certification is proper because the questions raised by this Complaint are of common or general interest affecting numerous persons, such that it is impracticable to bring all Class Members before the Court.

28.    This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to Class Members, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the Class Members and making final injunctive relief appropriate with respect to the Class in its entirety. Defendant's policies and practices challenged herein apply to and affect Class Members uniformly and Representative Plaintiff's challenge of these policies and practices hinges on Defendant's conduct with respect to the Classes in their entireties, not on facts or law applicable only to Representative Plaintiff.

29.     Unless a Class-wide injunction is issued, Defendant may continue in its failure to properly secure the Private Information of Class Members, and Defendant may continue to act unlawfully as set forth in this Complaint.

30.     Further, Defendant has acted or refused to act on grounds generally applicable to the Class and, accordingly, final injunctive or corresponding declaratory relief with regard to the Class Members as a whole is appropriate under Rule 23(b)(2) of the Federal Rules of Civil Procedure.

## COMMON FACTUAL ALLEGATIONS

### The Cyberattack

31.     In the course of the Data Breach, one or more unauthorized third parties accessed Class Members' Private Information. Representative Plaintiff was among the individuals whose data was accessed in the Data Breach.

32.     According to the Data Breach Notification and/or publicly filed documents, Representative Plaintiff states, on information and belief, that thousands of persons were affected by the Data Breach.

33.     Representative Plaintiff was provided the information detailed above upon Representative Plaintiff's receipt of a letter from Defendant. Representative Plaintiff was not aware of the Data Breach until receiving that letter.

### Defendant's Failed Response to the Breach

34.     Upon information and belief, the unauthorized third-party cybercriminals gained access to Representative Plaintiff's and Class Members' Private Information with the intent of misusing the Private Information, including marketing and selling Representative Plaintiff's and Class Members' Private Information.

35. Not until long after it claims to have discovered the Data Breach did Defendant begin sending the Notice to persons whose Private Information Defendant confirmed was potentially compromised as a result of the Data Breach. The Notice provided basic details of the Data Breach and Defendant's recommended next steps.

36. Representative Plaintiff and Class Members were required to provide their Private Information to Defendant in order to provide services. Thus, Defendant created, collected and stored Representative Plaintiff's and Class Members' Private Information with the reasonable expectation and mutual understanding that Defendant would comply with its obligations to keep such information confidential and secure from unauthorized access.

37. Despite this, Representative Plaintiff and the Class Members remain, even today, in the dark regarding what particular data was stolen, the particular malware used and what steps are being taken, if any, to secure their Private Information going forward. Representative Plaintiff and Class Members are thus left to speculate as to where their Private Information ended up, who has used it and for what potentially nefarious purposes. Indeed, they are left to further speculate as to the full impact of the Data Breach and how exactly Defendant intends to enhance its information security systems and monitoring capabilities so as to prevent further breaches.

38. Representative Plaintiff's and Class Members' Private Information may end up for sale on the dark web, or simply fall into the hands of companies that will use the detailed Private Information for targeted marketing without Representative Plaintiff's and/or Class Members' approval. Either way, unauthorized individuals can now easily access Representative Plaintiff's and Class Members' Private Information.

**Defendant Collected/Stored Class Members' Private Information**

39.    Defendant acquired, collected, stored and assured reasonable security over Representative Plaintiff's and Class Members' Private Information.

40.    As a condition of its relationships with Representative Plaintiff and Class Members, Defendant required that Representative Plaintiff and Class Members entrust Defendant with highly sensitive and confidential Private Information. Defendant, in turn, stored that information on Defendant's system that was ultimately affected by the Data Breach.

41.    By obtaining, collecting and storing Representative Plaintiff's and Class Members' Private Information, Defendant assumed legal and equitable duties over the Private Information and knew or should have known that it was thereafter responsible for protecting Representative Plaintiff's and Class Members' Private Information from unauthorized disclosure.

42.    Representative Plaintiff and Class Members have taken reasonable steps to maintain their Private Information's confidentiality. Representative Plaintiff and Class Members relied on Defendant to keep their Private Information confidential and securely maintained, to use this information for business purposes only and to make only authorized disclosures of this information.

43.    Defendant could have prevented the Data Breach by properly securing and encrypting and/or more securely encrypting its servers generally, as well as Representative Plaintiff's and Class Members' Private Information.

44.    Defendant's negligence in safeguarding Representative Plaintiff's and Class Members' Private Information is exacerbated by repeated warnings and alerts directed to protecting and securing sensitive data, as evidenced by the trending data breach attacks in recent years.

45.     Due to the high-profile nature of these breaches, and other breaches of its kind, Defendant was and/or certainly should have been on notice and aware of such attacks occurring in its industry and, therefore, should have assumed and adequately performed the duty of preparing for such an imminent attack. This is especially true given that Defendant is a large, sophisticated operation with the resources to put adequate data security protocols in place.

46.     And yet, despite the prevalence of public announcements of data breach and data security compromises, Defendant failed to take appropriate steps to protect Representative Plaintiff's and Class Members' Private Information from being compromised.

**Defendant Had an Obligation to Protect the Stolen Information**

47.     In failing to adequately secure Representative Plaintiff's and Class Member's sensitive data, Defendant breached duties it owed Representative Plaintiff and Class Members under statutory and common law.

48.     Representative Plaintiff and Class Members surrendered their highly sensitive Private Information to Defendant under the implied condition that Defendant would keep it private and secure. Accordingly, Defendant also has an implied duty to safeguard their Private Information, independent of any statute.

49.     Defendant was also prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

50.    In addition to its obligations under federal and state laws, Defendant owed a duty to Representative Plaintiff and Class Members to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the Private Information in Defendant's possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons. Defendant owed a duty to Representative Plaintiff and Class Members to provide reasonable security, including consistency with industry standards and requirements, and to ensure that its computer systems, networks and protocols adequately protected Representative Plaintiff's and Class Members' Private Information.

51.    Defendant owed a duty to Representative Plaintiff and Class Members to design, maintain and test its computer systems, servers and networks to ensure that all Private Information in its possession was adequately secured and protected.

52.    Defendant owed a duty to Representative Plaintiff and Class Members to create and implement reasonable data security practices and procedures to protect all Private Information in its possession, including not sharing information with other entities who maintained sub-standard data security systems.

53.    Defendant owed a duty to Representative Plaintiff and Class Members to implement processes that would immediately detect a breach of its data security systems in a timely manner.

54.    Defendant owed a duty to Representative Plaintiff and Class Members to act upon data security warnings and alerts in a timely fashion.

55.    Defendant owed a duty to Representative Plaintiff and Class Members to disclose if its computer systems and data security practices were inadequate to safeguard individuals'

Private Information from theft because such an inadequacy would be a material fact in the decision to entrust their Private Information to Defendant.

56.    Defendant owed a duty of care to Representative Plaintiff and Class Members because they were foreseeable and probable victims of any inadequate data security practices.

57.    Defendant owed a duty to Representative Plaintiff and Class Members to encrypt and/or more reliably encrypt Representative Plaintiff's and Class Members' Private Information and monitor user behavior and activity in order to identity possible threats.

**Value of the Relevant Sensitive Information**

58.    While the greater efficiency of electronic health records translates to cost savings for providers, it also comes with the risk of privacy breaches. These electronic health records contain a plethora of sensitive information (e.g., patient data, patient diagnosis, lab results, medical prescriptions, treatment plans, etc.) that is valuable to cybercriminals. One patient's complete record can be sold for hundreds of dollars on the dark web. As such, Private Information is a valuable commodity for which a "cyber black market" exists in which criminals openly post stolen payment card numbers, Social Security numbers and other personal information on a number of underground internet websites.

59.    The high value of Private Information to criminals is further evidenced by the prices they will pay for it through the dark web. Numerous sources cite dark web pricing for stolen identity credentials. For example, personal information can be sold at a price ranging from $40 to $200, and bank details have a price range of $50 to $200.[3] Experian reports that a stolen credit or

---

[3]    *Your personal data is for sale on the dark web. Here's how much it costs,* Digital Trends, Oct. 16, 2019, *available at*: https://www.digitaltrends.com/computing/personal-data-sold-on-the-dark-web-how-much-it-costs/.

debit card number can sell for $5 to $110 on the dark web.[4] Criminals can also purchase access to entire company data breaches from $999 to $4,995.[5]

60.     Between 2005 and 2019, at least 249 million people were affected by healthcare data breaches.[6] Indeed, during 2019 alone, over 41 million healthcare records were exposed, stolen, or unlawfully disclosed in 505 data breaches.[7] In short, these sorts of data breaches are increasingly common, especially among healthcare systems, which account for 30.03 percent of overall health data breaches, according to cybersecurity firm Tenable.[8]

61.     These criminal activities have and will result in devastating financial and personal losses to Representative Plaintiff and Class Members. For example, it is believed that certain Private Information compromised in the 2017 Equifax data breach was being used three years later by identity thieves to apply for COVID-19-related benefits in the state of Oklahoma. Such fraud will be an omnipresent threat for Representative Plaintiff and Class Members for the rest of their lives. They will need to remain constantly vigilant.

62.     The FTC defines identity theft as "a fraud committed or attempted using the identifying information of another person without authority." The FTC describes "identifying information" as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific person," including, among other things, "[n]ame, Social Security number, date of birth, official State or government issued driver's license or identification number,

---

[4]     *Here's How Much Your Personal Information Is Selling for on the Dark Web*, Experian, Dec. 6, 2017, *available at*: https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.
[5]     *In the Dark*, VPNOverview, 2019, *available at*:
https://vpnoverview.com/privacy/anonymous-browsing/in-the-dark/.
[6]     https://www.ncbi.nlm.nih.gov/pmc/articles/PMC7349636/#B5-healthcare-08-00133/.
[7]     https://www.hipaajournal.com/december-2019-healthcare-data-breach-report/.
[8]     https://www.tenable.com/blog/healthcare-security-ransomware-plays-a-prominent-role-in-covid-19-era-breaches/.

15

alien registration number, government passport number, employer or taxpayer identification number."

63.    Identity thieves can use Private Information, such as that of Representative Plaintiff and Class Members which Defendant failed to keep secure, to perpetrate a variety of crimes that harm victims. For instance, identity thieves may commit various types of government fraud such as immigration fraud, obtaining a driver's license or identification card in the victim's name but with another's picture, using the victim's information to obtain government benefits or filing a fraudulent tax return using the victim's information to obtain a fraudulent refund.

64.    The ramifications of Defendant's failure to keep secure Representative Plaintiff's and Class Members' Private Information are long lasting and severe. Once Private Information is stolen, particularly identification numbers, fraudulent use of that information and damage to victims may continue for years. Indeed, Representative Plaintiff's and Class Members' Private Information was taken by hackers to engage in identity theft or to sell it to other criminals who will purchase the Private Information for that purpose. The fraudulent activity resulting from the Data Breach may not come to light for years.

65.    There may be a time lag between when harm occurs versus when it is discovered and also between when Private Information is stolen and when it is used. According to the U.S. Government Accountability Office ("GAO"), which conducted a study regarding data breaches:

> [L]aw enforcement officials told us that in some cases, stolen data may be held for up to a year or more before being used to commit identity theft. Further, once stolen data have been sold or posted on the Web, fraudulent use of that information may continue for years. As a result, studies that attempt to measure the harm resulting from data breaches cannot necessarily rule out all future harm.[9]

---

[9]    *Report to Congressional Requesters*, GAO, at 29 (June 2007), *available at:* http://www.gao.gov/new.items/d07737.pdf/.

16

66.    The harm to Representative Plaintiff and Class Members is especially acute given the nature of the leaked data. Medical identity theft is one of the most common, most expensive and most difficult-to-prevent forms of identity theft. According to Kaiser Health News, "medical-related identity theft accounted for 43 percent of all identity thefts reported in the United States in 2013," which is more than identity thefts involving banking and finance, the government and the military, or education.[10]

67.    "Medical identity theft is a growing and dangerous crime that leaves its victims with little to no recourse for recovery," reported Pam Dixon, executive director of World Privacy Forum. "Victims often experience financial repercussions and worse yet, they frequently discover erroneous information has been added to their personal medical files due to the thief's activities."[11]

68.    When cybercriminals access financial information, health insurance information and other personally sensitive data—as they did here—there is no limit to the amount of fraud to which Defendant may have exposed Representative Plaintiff and Class Members.

69.    A study by Experian found that the average total cost of medical identity theft is "about $20,000" per incident, and that a majority of victims of medical identity theft were forced to pay out-of-pocket costs for healthcare they did not receive in order to restore coverage.[12] Almost half of medical identify victims lose their healthcare coverage as a result of the incident, while

---

[10]    Michael Ollove, "The Rise of Medical Identity Theft in Healthcare," Kaiser Health News, Feb. 7, 2014, https://khn.org/news/rise-of-indentity-theft/.
[11]    *Id.*
[12]    Elinor Mills, "Study: Medical Identity Theft is Costly for Victims," CNET (Mar, 3, 2010), https://www.cnet.com/news/study-medical-identity-theft-is-costly-for-victims/.

nearly one-third saw their insurance premiums rise, and 40 percent were never able to resolve their identity theft at all. [13]

70.    And data breaches are preventable.[14] As Lucy Thompson wrote in the DATA BREACH AND ENCRYPTION HANDBOOK, "[i]n almost all cases, the data breaches that occurred could have been prevented by proper planning and the correct design and implementation of appropriate security solutions."[15] She added that "[o]rganizations that collect, use, store, and share sensitive personal data must accept responsibility for protecting the information and ensuring that it is not compromised…."[16]

71.    Most of the reported data breaches are a result of lax security and the failure to create or enforce appropriate security policies, rules and procedures. Appropriate information security controls, including encryption, must be implemented and enforced in a rigorous and disciplined manner so that a *data breach never occurs*.[17]

72.    Here, Defendant knew of the importance of safeguarding Private Information and of the foreseeable consequences that would occur if Representative Plaintiff's and Class Members' Private Information was stolen, including the significant costs that would be placed on Representative Plaintiff and Class Members as a result of a breach of this magnitude. As detailed above, Defendant knew or should have known that the development and use of such protocols

---

[13]    *Id.*; see also Healthcare Data Breach: What to Know About them and What to Do After One, EXPERIAN, https://www.experian.com/blogs/ask-experian/healthcare-data-breach-what-to-know-about-them-and-what-to-do-after-one/.
[14]    Lucy L. Thompson, "Despite the Alarming Trends, Data Breaches Are Preventable," *in* DATA BREACH AND ENCRYPTION HANDBOOK (Lucy Thompson, ed., 2012).
[15]    *Id.* at 17.
[16]    *Id.* at 28.
[17]    *Id.*

were necessary to fulfill its statutory and common law duties to Representative Plaintiff and Class Members. Its failure to do so is therefore intentional, willful, reckless and/or grossly negligent.

73.     Defendant disregarded the rights of Representative Plaintiff and Class Members by, *inter alia*, (i) intentionally, willfully, recklessly and/or negligently failing to take adequate and reasonable measures to ensure that its network servers were protected against unauthorized intrusions, (ii) failing to disclose that it did not have adequately robust security protocols and training practices in place to adequately safeguard Representative Plaintiff's and Class Members' Private Information, (iii) failing to take standard and reasonably available steps to prevent the Data Breach, (iv) concealing the existence and extent of the Data Breach for an unreasonable duration of time, and (v) failing to provide Representative Plaintiff and Class Members prompt and accurate notice of the Data Breach.

**FIRST CLAIM FOR RELIEF**
**Negligence**
**(On behalf of the Nationwide Class)**

74.     Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

75.     At all times herein relevant, Defendant owed Representative Plaintiff and Class Members a duty of care, *inter alia*, to act with reasonable care to secure and safeguard their Private Information and to use commercially reasonable methods to do so. Defendant took on this obligation upon accepting and storing Representative Plaintiff's and Class Members' Private Information on its computer systems.

76.     Among these duties, Defendant was expected:

   a.     to exercise reasonable care in obtaining, retaining, securing, safeguarding, deleting and protecting the Private Information in its possession;

b.    to protect Representative Plaintiff's and Class Members' Private Information using reasonable and adequate security procedures and systems that were/are compliant with industry-standard practices;

c.    to implement processes to quickly detect the Data Breach and to timely act on warnings about data breaches; and

d.    to promptly notify Representative Plaintiff and Class Members of any data breach, security incident or intrusion that affected or may have affected their Private Information.

77.    Defendant knew that the Private Information was private and confidential and should be protected as private and confidential and, thus, Defendant owed a duty of care not to subject Representative Plaintiff and Class Members to an unreasonable risk of harm because they were foreseeable and probable victims of any inadequate security practices.

78.    Defendant knew or should have known of the risks inherent in collecting and storing Private Information, the vulnerabilities of its data security systems and the importance of adequate security. Defendant knew about numerous, well-publicized data breaches.

79.    Defendant knew or should have known that its data systems and networks did not adequately safeguard Representative Plaintiff's and Class Members' Private Information.

80.    Only Defendant was in the position to ensure that its systems and protocols were sufficient to protect the Private Information that Representative Plaintiff and Class Members had entrusted to it.

81.    Defendant breached its duties to Representative Plaintiff and Class Members by failing to provide fair, reasonable or adequate computer systems and data security practices to safeguard Representative Plaintiff's and Class Members' Private Information.

82.    Because Defendant knew that a breach of its systems could damage thousands of individuals, including Representative Plaintiff and Class Members, Defendant had a duty to adequately protect its data systems and the Private Information contained thereon.

83.    Representative Plaintiff's and Class Members' willingness to entrust Defendant with its Private Information was predicated on the understanding that Defendant would take adequate security precautions. Moreover, only Defendant had the ability to protect its systems and the Private Information it stored on them from attack. Thus, Defendant had a special relationship with Representative Plaintiff and Class Members.

84.    Defendant also had independent duties under state and federal laws that required Defendant to reasonably safeguard Representative Plaintiff's and Class Members' Private Information and promptly notify them about the Data Breach. These "independent duties" are untethered to any contract between Defendant and Representative Plaintiff and/or the remaining Class Members.

85.    Defendant breached its general duty of care to Representative Plaintiff and Class Members in, but not necessarily limited to, the following ways:

     a.    by failing to provide fair, reasonable or adequate computer systems and data security practices to safeguard Representative Plaintiff's and Class Members' Private Information;

     b.    by failing to timely and accurately disclose that Representative Plaintiff's and Class Members' Private Information had been improperly acquired or accessed;

     c.    by failing to adequately protect and safeguard the Private Information by knowingly disregarding standard information security principles, despite obvious risks, and by allowing unmonitored and unrestricted access to unsecured Private Information;

     d.    by failing to provide adequate supervision and oversight of the Private Information with which it was and is entrusted, in spite of the known risk and foreseeable likelihood of breach and misuse, which permitted an unknown third party to gather Representative Plaintiff's and Class Members' Private Information, misuse the Private Information and intentionally disclose it to others without consent;

e.    by failing to adequately train its employees to not store Private Information longer than absolutely necessary;

f.    by failing to consistently enforce security policies aimed at protecting Representative Plaintiff's and the Class Members' Private Information;

g.    by failing to implement processes to quickly detect data breaches, security incidents or intrusions; and

h.    by failing to encrypt Representative Plaintiff's and Class Members' Private Information and monitor user behavior and activity in order to identify possible threats.

86.    Defendant's willful failure to abide by these duties was wrongful, reckless and/or grossly negligent in light of the foreseeable risks and known threats.

87.    As a proximate and foreseeable result of Defendant's grossly negligent conduct, Representative Plaintiff and Class Members have suffered damages and are at imminent risk of additional harms and damages (as alleged above).

88.    The law further imposes an affirmative duty on Defendant to timely disclose the unauthorized access and theft of the Private Information to Representative Plaintiff and Class Members so that they could and/or still can take appropriate measures to mitigate damages, protect against adverse consequences and thwart future misuse of their Private Information.

89.    Defendant breached its duty to notify Representative Plaintiff and Class Members of the unauthorized access by waiting excessively after learning of the Data Breach to notify Representative Plaintiff and Class Members and then by failing and continuing to fail to provide Representative Plaintiff and Class Members sufficient information regarding the breach. To date, Defendant has not provided sufficient information to Representative Plaintiff and Class Members regarding the extent of the unauthorized access and continues to breach its disclosure obligations to Representative Plaintiff and Class Members.

90.    Further, through its failure to provide timely and clear notification of the Data Breach to Representative Plaintiff and Class Members, Defendant prevented Representative Plaintiff and Class Members from taking meaningful, proactive steps to, *inter alia*, secure and/or access their Private Information.

91.    There is a close causal connection between Defendant's failure to implement security measures to protect Representative Plaintiff's and Class Members' Private Information and the harm suffered, or risk of imminent harm suffered, by Representative Plaintiff and Class Members. Representative Plaintiff's and Class Members' Private Information was accessed as the proximate result of Defendant's failure to exercise reasonable care in safeguarding such Private Information by adopting, implementing and maintaining appropriate security measures.

92.    Defendant's wrongful actions, inactions and omissions constituted (and continue to constitute) common law negligence.

93.    The damages Representative Plaintiff and Class Members have suffered (as alleged above) and will continue to suffer were and are the direct and proximate result of Defendant's grossly negligent conduct.

94.    Additionally, 15 U.S.C. § 45 (FTC Act, Section 5) prohibits "unfair […] practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect Private Information. The FTC publications and orders described above also form part of the basis of Defendant's duty in this regard.

95.    Defendant violated 15 U.S.C. § 45 by failing to use reasonable measures to protect Private Information and not complying with applicable industry standards, as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of Private

Information it obtained and stored and the foreseeable consequences of the immense damages that would result to Representative Plaintiff and Class Members.

96.     As a direct and proximate result of Defendant's negligence, Representative Plaintiff and Class Members have suffered and will continue to suffer injury, including, but not limited to, (i) actual identity theft, (ii) the loss of the opportunity of how their Private Information is used, (iii) the compromise, publication and/or theft of their Private Information, (iv) out-of-pocket expenses associated with the prevention, detection and recovery from identity theft, tax fraud and/or unauthorized use of their Private Information, (v) lost opportunity costs associated with effort expended and the loss of productivity addressing and attempting to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest and recover from embarrassment and identity theft, (vi) lost continuity in relation to their personal records, (vii) the continued risk to their Private Information, which may remain in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Representative Plaintiff's and Class Members' Private Information in its continued possession, and (viii) future costs in terms of time, effort and money that will be expended to prevent, detect, contest and repair the impact of the Private Information compromised as a result of the Data Breach for the remainder of the lives of Representative Plaintiff and Class Members.

97.     As a direct and proximate result of Defendant's negligence, Representative Plaintiff and Class Members have suffered and will continue to suffer other forms of injury and/or harm, including, but not limited to, anxiety, emotional distress, loss of privacy and other economic and noneconomic losses.

98.     Additionally, as a direct and proximate result of Defendant's negligence, Representative Plaintiff and Class Members have suffered and will continue to suffer the continued risks of exposure of their Private Information, which remains in Defendant's possession and is subject to further unauthorized disclosures so long as Defendant fails to undertake appropriate and adequate measures to protect Private Information in its continued possession.

**SECOND CLAIM FOR RELIEF**
**Breach of Implied Contract**
**(On behalf of the Nationwide Class)**

99.     Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth herein.

100.    Through their course of conduct, Defendant, Representative Plaintiff and Class Members entered into implied contracts for Defendant to implement data security adequate to safeguard and protect the privacy of Representative Plaintiff's and Class Members' Private Information.

101.    Defendant solicited, invited and required Representative Plaintiff and Class Members to provide their Private Information as part of Defendant's regular business practices. Representative Plaintiff and Class Members accepted Defendant's offers by, in part, providing their Private Information to Defendant.

102.    As a condition of being direct customers and/or employees of Defendant, Representative Plaintiff and Class Members provided and entrusted their Private Information to Defendant. In so doing, Representative Plaintiff and Class Members entered into implied contracts with Defendant by which Defendant agreed to safeguard and protect such non-public information, to keep such information secure and confidential and to timely and accurately notify

Representative Plaintiff and Class Members if its data had been breached and compromised or stolen.

103.    A meeting of the minds occurred when Representative Plaintiff and Class Members agreed to, and did, provide their Private Information to Defendant, in exchange for, amongst other things, the protection of their Private Information.

104.    Representative Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendant.

105.    Defendant breached the implied contracts it made with Representative Plaintiff and Class Members by failing to safeguard and protect their Private Information and by failing to provide timely and accurate notice to them that their Private Information was compromised as a result of the Data Breach.

106.    As a direct and proximate result of Defendant's above-described breach of implied contract, Representative Plaintiff and Class Members have suffered and will continue to suffer (i) ongoing, imminent and impending threat of identity theft crimes, fraud and abuse, resulting in monetary loss and economic harm, (ii) actual identity theft crimes, fraud and abuse, resulting in monetary loss and economic harm, (iii) loss of the confidentiality of the stolen confidential data, (iv) the illegal sale of the compromised data on the dark web, (v) lost work time, and (vi) other economic and noneconomic harm.

**THIRD CLAIM FOR RELIEF**
**Breach of the Implied Covenant of Good Faith and Fair Dealing**
**(On behalf of the Nationwide Class)**

107.    Each and every allegation of the preceding paragraphs is incorporated in this Count with the same force and effect as though fully set forth therein.

108.    Every contract in this State has an implied covenant of good faith and fair dealing. This implied covenant is an independent duty and may be breached even when there is no breach of a contract's actual and/or express terms.

109.    Representative Plaintiff and Class Members have complied with and performed all conditions of their contracts with Defendant.

110.    Defendant breached the implied covenant of good faith and fair dealing by failing to maintain adequate computer systems and data security practices to safeguard Private Information, failing to timely and accurately disclose the Data Breach to Representative Plaintiff and Class Members and continued acceptance of Private Information and storage of other personal information after Defendant knew or should have known of the security vulnerabilities of the systems that were exploited in the Data Breach.

111.    Defendant acted in bad faith and/or with malicious motive in denying Representative Plaintiff and Class Members the full benefit of their bargains as originally intended by the parties, thereby causing them injury in an amount to be determined at trial.

## RELIEF SOUGHT

**WHEREFORE,** Representative Plaintiff, on Representative Plaintiff's own behalf and on behalf of each member of the proposed Plaintiff Class respectfully requests that the Court enter judgment in favor of Representative Plaintiff and the Class for the following specific relief against Defendant as follows:

1.    That the Court declare, adjudge and decree that this action is a proper class action and certify the proposed Class under Federal Rules of Civil Procedure Rule 23 (b)(1), (b)(2), and/or (b)(3), including appointment of Representative Plaintiff's counsel as Class Counsel;

2.      For an award of damages, including actual, nominal and consequential damages, as allowed by law in an amount to be determined;

3.      That the Court enjoin Defendant, ordering it to cease and desist from unlawful activities;

4.      For equitable relief enjoining Defendant from engaging in the wrongful conduct complained of herein pertaining to the misuse and/or disclosure of Representative Plaintiff's and Class Members' Private Information, and from refusing to issue prompt, complete and accurate disclosures to Representative Plaintiff and Class Members;

5.      For injunctive relief requested by Representative Plaintiff, including, but not limited to, injunctive and other equitable relief as is necessary to protect the interests of Representative Plaintiff and Class Members, including, but not limited to, an Order:

    a.      prohibiting Defendant from engaging in the wrongful and unlawful acts described herein;

    b.      requiring Defendant to protect, including through encryption, all data collected through the course of business in accordance with all applicable regulations, industry standards and federal, state or local laws;

    c.      requiring Defendant to delete and purge Representative Plaintiff's and Class Members' Private Information unless Defendant can provide to the Court reasonable justification for the retention and use of such information when weighed against the privacy interests of Representative Plaintiff and Class Members;

    d.      requiring Defendant to implement and maintain a comprehensive Information Security Program designed to protect the confidentiality and integrity of Representative Plaintiff's and Class Members' Private Information;

    e.      requiring Defendant to engage independent third-party security auditors and internal personnel to run automated security monitoring, simulated attacks, penetration tests and audits on Defendant's systems on a periodic basis;

    f.      prohibiting Defendant from maintaining Representative Plaintiff's and Class Members' Private Information on a cloud-based database;

g.  requiring Defendant to segment data by creating firewalls and access controls so that if one area of Defendant's network is compromised, hackers cannot gain access to other portions of Defendant's systems;

h.  requiring Defendant to conduct regular database scanning and securing checks;

i.  requiring Defendant to establish an information security training program that includes at least annual information security training for all employees, with additional training to be provided as appropriate based upon the employees' respective responsibilities with handling Private Information, as well as protecting the Private Information of Representative Plaintiff and Class Members;

j.  requiring Defendant to implement a system of tests to assess its respective employees' knowledge of the education programs discussed in the preceding subparagraphs, as well as randomly and periodically testing employees' compliance with Defendant's policies, programs and systems for protecting personal identifying information;

k.  requiring Defendant to implement, maintain, review and revise as necessary a threat management program to appropriately monitor Defendant's networks for internal and external threats, and assess whether monitoring tools are properly configured, tested and updated; and

l.  requiring Defendant to meaningfully educate all Class Members about the threats that they face as a result of the loss of their confidential personal identifying information to third parties, as well as the steps affected individuals must take to protect themselves.

6.  For prejudgment interest on all amounts awarded, at the prevailing legal rate;

7.  For an award of attorneys' fees, costs and litigation expenses, as allowed by law; and

8.  For all other Orders, findings and determinations identified and sought in this Complaint.

## JURY DEMAND

Representative Plaintiff, individually and on behalf of the Plaintiff Class hereby demands a trial by jury for all issues triable by jury.

Dated: November 22, 2024          By:     _/s/ William F. Kendig_
                                         William F. Kendig (LA S.B. 17644)
                                         **RICE & KENDIG, LLC**
                                         1030 Kings Highway
                                         Shreveport, LA 71104
                                         Telephone:   (318) 222-2772
                                         Facsimile:   (318) 222-2770
                                         Email:        wfkendig@ricekendig.com

                                         Laura Van Note, Esq. (CA S.B. #310160)*
                                         **COLE & VAN NOTE**
                                         555 12th Street, Suite 2100
                                         Oakland, California 94607
                                         Telephone:   (510) 891-9800
                                         Facsimile:   (510) 891-7030
                                         Email:        lvn@colevannote.com

                                         *Attorneys for Representative Plaintiff and the*
                                         *Plaintiff Class*

                                         *\*Pro hac vice forthcoming*