UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| ADAM HERRELL, individually, and on behalf of all others similarly situated, | Case No.: 3:24-cv-00965-SDD-SDJ |
| Plaintiff, | Judge:    Honorable Shelly D. Dick |
| v. | Magistrate Judge:    Honorable Scott D. Johnson |
| L & B TRANSPORT, LLC, | |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT WITH INCORPORATED MEMORANDUM OF LAW**

Plaintiff Adam Herrell ("Plaintiff") individually and on behalf of others similarly situated, respectfully move pursuant to Fed. R. Civ. P. 23(a), (b)(3), and (e) to certify the Settlement Class, preliminarily approve the proposed Settlement, and approve the Notices, Notice Program, Claim Form, and Claims process.

I.    **INTRODUCTION**

In November 2024, Defendant L&B Transport, LLC ("Defendant") announced a Data Incident[1] impacting Private Information, including names, Social Security numbers and driver's license numbers of approximately 3,191 individuals. See Declaration of Laura Van Note, Esq. ("Van Note Decl.") ¶ 3, attached hereto as **Exhibit B**. As a result of the Data Incident, this Action was initiated in connection with Defendant's alleged failure to safeguard the Private Information it maintained on behalf of the Settlement Class. *Id.* ¶ 3. Defendant denies all liability and wrongdoing. *Id.* ¶ 4.

---

[1] All capitalized terms herein shall have the same meanings as those defined in Section II of the Settlement Agreement ("Agreement"), attached here as **Exhibit A**.

After informed and diligent arm's-length negotiations, the Parties reached a Settlement that is fair, adequate, and reasonable. *Id.* ¶ 8. The Settlement's $220,000 all cash, non-reversionary Settlement Fund will be used to pay: (1) all Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any Court-awarded Service Awards; and (4) any Court-awarded attorneys' fees and costs. Agreement ¶ 64. Class Members will be able to submit for a Settlement payment of up to $5,000 reimbursement in the form of a Documented Loss Payment, including attested lost time at $25 per hour for up to four hours. Agreement ¶ 68(a). Further, Class Members, who make a valid claim, will receive a *pro rata* share of the remaining Settlement Fund once the above payments are distributed. Agreement ¶ 68(b).

Additionally, Plaintiff has received assurances that Defendant either has undertaken or will undertake reasonable steps to further secure its systems and environment. Agreement ¶ 70. Plaintiff and Plaintiff's Counsel strongly believe the Settlement is favorable to the Settlement Class. Van Note Decl. ¶ 10.

## II.   BACKGROUND AND PROCEDURAL HISTORY

Defendant is a Louisiana for-profit transportation company specializing in rubber-lined trailer service for strong acids and the transportation of commodities, including hazardous materials, in bulk across the United States and Canada. Agreement ¶ 1. In August 2024, Defendant discovered that an unauthorized party infiltrated and extracted Private Information from its computer systems. Agreement ¶ 3. On November 11, 2024, Defendant began sending notice letters to individuals advising that their Private Information had been potentially compromised in the Data Incident. Agreement ¶ 5. Commencing on November 22, 2024, Plaintiff filed a Class Action Complaint against Defendant asserting negligence, breach of implied contract and breach of the implied covenant of good faith and fair dealing. Agreement ¶ 6.

In preparation for the case, Plaintiff's Counsel prepared for discovery, researched to understand how the incident occurred, the type of information involved and whether the information was published on the Dark Web. Van Note Decl. ¶ 7. The Parties began discussing settlement and engaged in arm's-length negotiations. After weeks of discussions, the Parties were able to negotiate a settlement in principle on January 13, 2025, agreeing upon the material terms of a settlement. *Id.* ¶ 8. Over several weeks, the Parties diligently drafted, negotiated, and finalized the Settlement Agreement, Notices, and Claim Form, and agreed to a settlement administrator. *Id.* ¶ 9. The Settlement Agreement was fully executed on February 11, 2025. *Id.*

### III.  SUMMARY OF SETTLEMENT

#### A.  Settlement Class

The Settlement Class has approximately 3,191 members and is defined as follows:

> All persons in the United States who were notified that their Private Information was potentially exposed to unauthorized third parties as a result of the L&B Transport, LLC Data Incident allegedly discovered by Defendant in August 2024.

Agreement. ¶ 57. Excluded from the Settlement Class are all persons who are governing board members of Defendant; governmental entities; the Court, Court's immediate family, and Court staff; and any individual who timely and validly opts-out of the Settlement. *Id.*

#### B.  Settlement Consideration

The Settlement's non-reversionary $220,000.00 Settlement Fund will be the total sum paid by Defendant to settle this Action and will be used to pay: (1) all Settlement Class Member Benefits; (2) all Settlement Administration Costs; (3) any Service Awards to Class Representatives; and (4) any attorneys' fees and costs awarded to Class Counsel. *Id.* ¶ 64. Settlement Class Members can submit a claim for a Settlement payment of up to $5,000 reimbursement in the form of a Documented Loss payment, including an attested lost time of $25

per hour for up to four hours. Agreement ¶ 68(a). Following the distribution of Administrative Expenses, Service Awards, Documented Loss Claims, Attorneys' Fees and Class Counsel's Litigation Expenses, the Settlement Administrator will make a pro rata cash payment from the remaining Settlement fund to each Class Member who submits a valid claim, as determined by the Settlement Administrator. *Id.* ¶ 68(b).

### C. Business Practice Changes

Defendant has provided assurances that it either has or will undertake reasonable steps to further secure its systems and environments. *Id.* ¶ 70.

### D. Releases

The Releasing Parties will release the Released Parties for claims relating to the Data Incident. Regardless of whether they submit a Claim, Settlement Class Members who do not opt-out of the Settlement will release all claims, whether known or unknown, against Defendant and the other Released Parties. *Id.* § XIII.

### E. The Notice Program, Claim Process, Opt-Outs, and Objections

The Parties have agreed to use Apex Class Action Administration ("Apex") as the Settlement Administrator, who shall administer various aspects of the Settlement under the Parties' supervision. *Id.* ¶ 73.

*Notice Program* - Defendant will deliver the Class List to the Settlement Administrator within 15 days of the Preliminary Approval Order. *Id.* ¶ 78. Within 30 days of Preliminary Approval, Email Notice and Postcard Notice will be sent to Settlement Class members to either the email address (if available) or last postal address Defendant has on record. *Id.* ¶ 79. The Settlement Administrator will perform reasonable address traces for undeliverable Postcard Notices. *Id.* ¶ 86. Email Notice and Postcard Notice shall include, *inter alia*: the Settlement's main

4

terms; how to submit a Claim Form; the Claim Form Deadline; the opt-out deadline; the deadline to object to the Settlement and/or Application for Attorneys' Fees, Costs, and Service Awards; Final Approval Hearing date; and Settlement Website address at which Settlement Class members may access the Agreement and other related documents and information. *Id.* ¶ 80. Those Notices will direct Settlement Class members to review the Long Form Notice's opt-out and objection instructions. *Id*.

*Claims Process* - The Claims process is structured to ensure all Settlement Class members have adequate time to review the Settlement terms, compile documents supporting their claim for Documented Losses, to submit Claims and decide whether to opt-out or object. Van Note Decl. ¶ 25. The Claim Form is in plain language for easy completion. *Id.* The Settlement Administrator will review the Claim Forms for completeness and validity. Agreement ¶¶ 91-92.

*Opt-outs and Objections* – The opt-out and objection deadlines are 45 days before the original Final Approval Hearing date. *Id.* ¶ 87. This will provide sufficient time to access and review the Settlement documents, including Plaintiff's Application for Attorneys' Fees, Costs, and Service Awards, which will be filed 45 days before the original Final Approval Hearing date and posted on the Settlement Website. *Id*. ¶ 100. Anyone who opts-out may not object.

F.     **Service Awards, Attorneys' Fees and Costs**

*Service Awards* - The Settlement Agreement calls for reasonable Service Award for the Class Representative of $5,000, *id*. ¶ 109, which is meant to compensate him for his efforts on behalf of the Settlement Class, including serving as the named Plaintiff, assisting in the Action's investigation, maintaining contact with his Counsel, reviewing case documents, being prepared to assist with discovery and answering his Counsel's many questions. Van Note Decl. ¶ 34.

*Attorneys' Fees and Costs* - After agreeing to the Settlement's material terms, Plaintiff's

5

Counsel negotiated attorneys' fees and costs as part of the total Settlement Class Member Benefits. Plaintiff's Counsel intend to seek an attorneys' fees award not to exceed 33.33% of the Settlement Fund and reimbursement of litigation costs. Agreement ¶ 103. The Notices advise the Settlement Class of these intended requests and further information of how to object. Van Note Decl. ¶ 33.

### G. Funds Remaining After Distribution

The Settlement will exhaust the Settlement Fund. Agreement ¶ 105. If funds remain from uncashed checks 20 days following the 90-day check negotiation period, all remaining funds shall be distributed to an appropriate mutually agreeable *cy pres* recipient to be approved by the Court. *Id.*

## IV. LEGAL AUTHORITY

Rule 23(e) requires court approval of any class settlement, following notice to the class. The preliminary approval stage provides a forum for the initial evaluation of a settlement, and where no class has been previously certified, a determination as to whether a proposed settlement class should be certified. *In re Beef Indus. Antitrust Litig.*, 607 F.2d 167, 175 (5th Cir. 1979). The standards at preliminary approval are not as stringent as those applied to a motion for final approval. *In re Pool Prods. Distrib. Mkt. Antitrust Litig.*, 310 F.R.D. 300, 314 (E.D. La. 2015)*.* "If the proposed settlement discloses no reason to doubt its fairness, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, does not grant excessive compensation to attorneys, and appears to fall within the range of possible approval, the court should grant preliminary approval." *Id.* at 314–15.

Plaintiff seeks preliminary approval of the proposed Settlement—an initial evaluation of the fairness of the proposed Settlement. *See Manual for Complex Litigation* § 30.44 (4th ed.). Judicial and public policy favors the resolution of disputes through settlement. *Parker v. Anderson*,

667 F.2d 1204, 1209 (5th Cir. 1982); *see also Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement." (quoting *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977)). There is a strong presumption in favor of finding settlement agreements fair—particularly when they have been reached by experienced counsel, with the assistance of a third-party neutral, after a meaningful exchange of information. *O'Donnell*, 2019 WL 4224040 at *9 (citing *Erica P. John Fund, Inc. v. Halliburton Co.*, No. 02-CV-1152-M, 2018 WL 1942227, at *4 (N.D. Tex. Apr. 25, 2018) (quoting *In re Heartland Payment Sys., Inc. Customer Data Sec. Breach Litig.*, 851 F. Supp. 2d 1040, 1063 (S.D. Tex. 2012))). Settlements are not required to "achieve some hypothetical standard constructed by imagining every benefit that might someday be obtained in contested litigation"— rather, compromise is the essence of settlement, and a court may rely on the judgment of experienced counsel for the parties. *Dehoyos v. Allstate Corp.*, 240 F.R.D. 269, 286 (W.D. Tex. Feb. 21, 2007). In deciding whether to grant preliminary approval, courts must examine whether the class certification requirements of Fed. R. Civ. P. 23 are satisfied for settlement purposes. *See In re Chinese-Manufactured Drywall Products Liab. Litig.*, 424 F. Supp. 3d 456, 482 (E.D. La. 2020) (certifying settlement class and approving settlement agreement).

Because the proposed Settlement falls within the range of possible approval, this Court should grant Preliminary Approval and allow Notice to be provided to the Settlement Class. *See* 2 Newberg & Conte, *Newberg on Class Actions* ("*Newberg*") § 11.25 (3d ed. 1992).

## V.    LEGAL DISCUSSION

### A.    The Court Should Certify the Proposed Class for Settlement Purposes.

Under Fed. R. Civ. P. 23(a), a class action may be maintained where the movants demonstrate numerosity, commonality, typicality, and adequacy of representation. Additionally,

7

under Fed. R. Civ. P. 23(b)(3), a class may be maintained where the predominance and superiority elements are met. When evaluating certification of a settlement class, manageability is not a concern because there will be no trial. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997).

Despite the necessarily rigorous analysis of certain prongs at the preliminary approval stage, class actions are regularly certified for settlement. Here, each of the requirements for certification of the proposed Settlement Class under Fed. R. Civ. P. 23 are satisfied for settlement purposes. Indeed, many federal and state courts have certified very similar classes based on the exact same certification criteria as is applicable in this Court including *Angell v. GEICO Advantage Ins. Co.*, 67 F.4th 727 (5th Cir. 2023); *Sos v. State Farm Mut. Auto. Ins. Co.*, 21-11769, 2023 WL 5608014, at *6 (11th Cir. Aug. 30, 2023); *Buffington v. Progressive Advanced Ins. Co.*, 342 F.R.D. 66, 69 (S.D.N.Y. 2022); *Paris v. Progressive Am. Ins. Co.*, 19-21761-CIV, 2020 WL 7039018, at *18 (S.D. Fla. Nov. 13, 2020); *Ostendorf v. Grange Indem. Ins. Co.,* 2:19-CV-1147, 2020 WL 5366380, at *3 (S.D. Ohio Sept. 8, 2020); *Jones v. Gov't Employees Ins. Co.*, 6:17-CV-891ORL40LRH, 2019 WL 1490703, at *4 (M.D. Fla. Apr. 4, 2019); and *Kostka v. Dickey's Barbecue Restaurants, Inc.*, No. 3:20-cv-03424-K, 2022 WL 16821685 (N.D. Tex. 2022). This case is no different.

### 1.    *Numerosity*

Numerosity requires "the class [be] so numerous that joinder of all members is impractical." Fed. R. Civ. P. 23(a)(1). A class of 100 to 150 members "is within the range that generally satisfied the numerosity requirement." *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999). Here, the Settlement Class clearly surpass that threshold because it includes approximately 3,191 individuals who had their Private Information potentially compromised. Judicial economy would be well-served by certification.

### 2. *Commonality*

Commonality requires Plaintiff to show "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). The threshold is not high, as every question need not be common, rather the questions linking class members must be substantially related to the resolution of the litigation and capable of generating common answers "apt to drive the resolution of the litigation." *In re Heartland*, 851 F. Supp. 2d at 1052 (citing *Wal-Mart Stores v. Dukes,* 564 U.S. 338, 347 (2011)). Commonality can be satisfied by an "instance of the defendant's injurious conduct, even when the resulting injurious effects—the damages—are diverse." *In re Deepwater Horizon*, 739 F.3d 790, 810–11 (5th Cir. 2014). Here, the commonality requirement is met because numerous common issues exist, including: whether Defendant failed to adequately safeguard the Private Information of the Settlement class; whether Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of that information; whether Defendant's data security systems prior to and during the Data Incident complied with applicable data security laws and regulations; and whether Defendant's conduct was negligent. These common questions, and others alleged in the Complaint, are central to the causes of action, will generate common answers, and can be addressed class-wide.

### 3. *Typicality*

Rule 23(a)(3) typicality is satisfied where "the claims or defenses of the class representatives have the same essential characteristics as those of the class as a whole." "If the claims arise from a similar course of conduct and share the same legal theory, factual differences will not defeat typicality." *See Stirman v. Exxon Corp.*, 280 F.3d 554, 562 (5th Cir. 2002). Plaintiff and Settlement Class members' claims all stem from the Data Security Incident and the cybersecurity protocols Defendant had (or did not have) in place to protect their Private

9

Information. All have Article III standing. *Kostka*, 2022 WL 16821685 at *4 (noting when class action settles at pleading stage, the court only considers whether named plaintiffs plausibly alleged the minimum Article III standing requirements, as Plaintiff has done in their Complaint). Thus, typicality is satisfied.

### 4. *Adequacy of Representation*

In order for Plaintiff to prove fair and adequate representation he must establish: (1) there is no antagonism or conflict of interest between the Class Representative and other Settlement Class Members and (2) Counsel and the Class Representative are competent, willing, and able to protect the interests of absent class members. *Feder v. Elec. Data. Sys. Corp.*, 429 F.3d 125, 130 (5th Cir. 2005). Here, Plaintiff's interests are aligned with the Settlement Class as he seeks relief for injuries arising out of the same Data Incident that compromised his and other Class Members' Private Information. The Settlement will make Plaintiff eligible for the same Settlement Class Member Benefits. Further, the proposed Class Counsel has significant experience as a class action litigator, including in data breach litigation, and is well suited to advocate for the Settlement Class. Van Note Decl. ¶ 35. Moreover, proposed Class Counsel's extensive work in negotiating assisted the Parties in reaching this early-stage settlement guaranteeing immediate relief.

### 5. *Predominance and Superiority*

Rule 23(b)(3) provides class certification is proper when "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for failure and efficiently adjudicating the controversy." This inquiry is two-fold. First, "[i]n order to 'predominate,' common issues must constitute a significant part of the individual cases." *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). In this case, key predominating questions are whether Defendant had a duty

to exercise reasonable care in safeguarding, securing, and protecting the Private Information and whether Defendant breached that duty. The common questions predominate over any individualized issues, like in other data breach cases. *See, e.g.*, *In re Heartland*, 851 F. Supp. 2d at 1059 (predominance satisfied in data breach case despite state law variations, concluding such variations went only to trial management, which was inapplicable for settlement class); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 312–15 (N.D. Cal. 2018) (same); *Hapka v. CareCentrix, Inc.*, No. 2:16-cv-02372-KGG, 2018 WL 1871449, at *2 (D. Kan. Feb. 15, 2018) (same); *In re The Home Depot, Inc., Customer Data Sec. Breach Litig.*, No. 1:14-md-02583-TWT, 2016 WL 6902351, at *2 (N.D. Ga. Aug. 23, 2016) (same). Second, the resolution of approximately 3,191 claims in one class action is far superior to litigating individual lawsuits. Class certification—and class resolution—guarantee an increase in judicial efficiency and conservation of resources over the alternative of individually litigating so many individual cases arising out of the Data Incident.

Thus, with Rule 23(a) and 23(b)(3) satisfied, the Settlement Class should be certified.

### B.     The Settlement Terms are Fair, Adequate, and Reasonable

At Preliminary Approval, and prior to approving notice be sent to the Settlement Class, the Court must determine that it will "likely" be able to grant Final Approval of the Settlement under Rule 23(e)(2). The Rule 23(e)(2) factors are whether:

> (A) the class representative and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, considering:
>    (i) the costs, risks, and delay of trial and appeal;
>    (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
>    (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>    (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Before the 2018 Rule 23(e) revisions, the Fifth Circuit developed its own *Reed* factors for whether a settlement is fair, adequate, and reasonable, including: (1) evidence the settlement was obtained by fraud or collusion; (2) complexity, expense, and likely duration of the litigation; (3) stage of the litigation and available discovery; (4) probability of plaintiffs prevailing on the merits; (5) range of possible recovery and certainty of damages; and (6) opinions of class counsel, class representatives, and absent class members. *O'Donnell*, 2018 WL 6219933 at *9 (citing *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

Because the Rule 23 and *Reed* factors overlap, Fifth Circuit courts often combine them. *Id.* at *9 (citing *Al's Pals Pet Care v. Woodforest Nat'l Bank, NA*, No. H-17-3852, 2019 WL 387409, at *3 (S.D. Tex. Jan. 30, 2019)); *see also* Fed. R. Civ. P. 23(e)(2), Committee Notes to 2018 amendments ("The goal of this amendment is not to displace any [circuit case-law] factor, but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

Because the public interest strongly favors the voluntary settlement of class actions, there is a strong presumption in favor of finding the settlement fair, reasonable, and adequate. *O'Donnell*, 2019 WL 427331 at *9. A proposed settlement "will be preliminarily approved unless there are obvious defects in the notice or other technical flaws, or the settlement is outside the range of reasonableness or appears to be the product of collusion, rather than arms-length negotiation." 2 *McLaughlin on Class Actions* § 6:7 (15th ed. 2018). Here, the Court should find it is likely to conclude the Settlement is fair, reasonable, and adequate under both the Rule 23(e)(2) and *Reed* factors and grant Preliminary Approval to allow Notice to issue to the Settlement Class.

> 1. ***Class Representatives and Counsel have Adequately Represented the Class. (Fed. R. Civ. P. 23(e)(2)(A))***

As with Rule 23(a) adequacy of representation requirement, plaintiffs must establish that: (1) the there is no antagonism or conflict of interest between the class representatives and other members of the class; and (2) counsel and the class representatives are competent, willing, and able to protect the interests of absent class members. *Feder*, 429 F.3d at 130. Here, the Settlement Class members are all potentially affected by the same Data Incident as the Class Representative, and thus the Class Representative has common interests with the Settlement Class. Moreover, the Class Representative has ably represented the Settlement Class, maintaining contact with Class Counsel, reviewing and approving pleadings, assisting in the investigation of the Action, remaining available for consultation throughout mediation, reviewing the Settlement documents, and answering Class Counsel's questions. Van Note Decl. ¶ 34.

Class Counsel has also vigorously pursued the Settlement Class's interests in securing a Settlement bringing immediate, valuable benefits, while avoiding the risks of continued litigation. To do so, she leaned on her extensive experience in data breach litigation her detailed investigation of this particular matter and through information exchanged during the course of settlement negotiations. *Id.* ¶ 32. As such, Fed. R. Civ. P. 23(e)(2)(A) supports Preliminary Approval.

> 2. ***The Settlement is the product of good-faith arm's-length negotiations and is absent of any collusion. (Fed. R. Civ. P. 23(e)(2)(B))***

The negotiations were clearly conducted at arm's length. *See generally In re Chinese-Manufactured Drywall Prod. Liab. Litig.,* 424 F. Supp. 3d 456, 486 (E.D. La. 2020) (noting presumption in favor of settlement was warranted where, among other things, it was "the product of arms-length negotiations between sophisticated parties"). "The Court may . . . presume that no fraud or collusion occurred between opposing counsel in the absence of any evidence to the

contrary." *O'Donnell*, 2019 WL 427331 at *10 (quoting *Welsh v. Navy Fed. Credit Union*, No. 16-CV-1062-DAE, 2018 WL 7283639, at *12 (W.D. Tex. Aug. 20, 2018)). "A settlement reached after a supervised mediation receives a presumption of reasonableness and the absence of collusion." 2 *McLaughlin on Class Actions* § 6:7 (8th ed. 2011).

Here, there is no evidence of fraud or collusion. After exchanging information related to liability and damages, the Parties participated spent weeks negotiating, drafting, and finalizing the finer points of the Settlement in the Agreement. Van Note Decl. ¶ 10. Moreover, the proposed Settlement does not favor any Settlement Class member over any other, weighing against any evidence of fraud or collusion and favoring approval. *See Vaughn v. Am., Honda Motor Co.*, 627 F. Supp. 2d 738, 748 (E.D. Tex. 2007). Accordingly, the presumption of reasonableness should apply here, and both Fed. R. Civ. P. 23(e)(2)(B) and the first *Reed* factor are satisfied.

> **3. The Settlement Agreement provides substantial relief to the Settlement Class, in light of the uncertainty of prevailing on the merits, the effectiveness of the proposed distribution of relief, and the attorneys' fees sought. (Fed. R. Civ. P. 23(e)(2)(C))**

The third and most important Rule 23(e)(2)(c) factor weighs heavily in favor of granting Preliminary Approval and overlaps with the second, fourth, and fifth *Reed* factors (complexity, length, and expense of litigating; probability of prevailing on the merits; and range of possible recovery and certainty of damages). The Settlement guarantees Settlement Class Members real relief for harms and protections from potential future fall-out from the Data Incident. Settlement Class Members may claim a cash payment (up to $5,000.00 for documented losses, including attested lost time at $25 per hour for up to four hours) AND if the Settlement Fund is not exhausted a pro rata cash payment. Agreement ¶ 68(a) & (b). These benefits are consistent with, and in fact exceed, other approved settlements. Van Note Decl. ¶ 16.

Although Plaintiff is confident in the merits of his claims, the litigation risks cannot be

14

disregarded. Besides the potential that either side will lose at trial, Plaintiff anticipates substantial additional costs if litigation continues, including experts. Plaintiff would need to defeat a motion to dismiss, counter a later motion for summary judgement, and both gain and maintain certification of the Settlement Class, with a near inevitable interlocutory appeal attempt. As the "legal issues involved in [in data breach litigation] are cutting-edge and unsettled . . . many resources would necessarily be spent litigating substantive law as well as other issues." *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 14-2522, 2015 WL 7253765, at *2 (D. Minn. Nov. 17, 2015).

Moreover, as will be detailed in the Motion for Final Approval, the 33.33% of the common Settlement Fund for attorneys' fees is regularly granted in the Fifth Circuit. (S.D. Tex. Jan. 14, 2016); *Frost v. Oil States Energy Servs., LLC*, No. 4:15–cv–1100, 2015 WL 12780763, *2 (S.D. Tex. Nov. 19, 2015). Indeed, it is typical that "fees between 32-percent and 37-percent have been awarded." *In re Chinese-Manufactured Drywall*, 424 F. Supp. 3d at 497–98. The Fifth Circuit has approved of district courts' "use of the percentage method cross-checked with the *Johnson* factors." *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 644 (5th Cir. 2012), *see, e.g., Miller v. Global Geophysical Servs., Inc.*, No. 14-cv-0708, 2016 WL 11645372, at *1.

The Settlement's value is guaranteed in the face of uncertainty in prevailing on the merits. While Plaintiff strongly believes in the merits, he also understands that Defendant asserts a number of potentially case-dispositive defenses. In fact, if litigation continues, Plaintiff will likely have to immediately survive a motion to dismiss. Due at least in part to the cutting-edge nature and the rapidly evolving law, data breach cases generally face substantial hurdles—even just to make it past the pleading stage. *See, e.g., Logan v. Marker Group, Inc.*, 4:22-CV-00174, 2024 WL 3489208 (S.D. Tex. July 18, 2024) (dismissing all but one claim). Class certification is another hurdle. *See, e.g., In re Blackbaud, Inc., Customer Data Breach Litig.*, No. 3:20-mn-02972-JFA,

15

2024 WL 2155221 (D.S.C. May 14, 2024) (denying class certification in a data breach case).

Plaintiff disputes the Defendant's defenses, but it is obvious that success at class certification and trial is far from certain. Through the Settlement, Plaintiff and Settlement Class members gain significant benefits without risking not receiving any relief at all if the case continues.

### 4. *The proposed Settlement treats Settlement Class Members equitably. (Fed. R. Civ. P. 23(e)(2)(D))*

Here, the Settlement does not improperly discriminate between any segments of the Settlement Class. All Settlement Class members are eligible to make a Claim for a Cash Payment, subject to proper claim completion and validation by the Settlement Administrator. Accordingly, this factor also weighs in favor of preliminary approval.

### 5. *The remaining "Reed" Factors also weigh in favor of Preliminary Approval.*

The remaining *Reed* factors also support Preliminary Approval and the Court's conclusion that it is likely to grant Final Approval. As to the third factor (stage of the litigation and available discovery), the Settlement was reached only after extensive investigation by the Parties and an informal exchange of information such that Class Counsel could fully understand the strengths and weaknesses of Plaintiff's claims and Defendant's defenses. Where Parties possess ample information with which to evaluate the merits of competing positions, a lack of formal discovery will not prevent preliminary approval of a settlement. *Ayers v. Thompson*, 358 F.3d 356, 369 (5th Cir. 2004); *Cotton,* 559 F.2d at 1331.

As to the sixth factor (opinions of class counsel, class representatives, and absent class members), it is most appropriately examined after the Settlement Class has been issued Notice and absent Settlement Class members have a chance to respond, but there is no reason to believe there will be antagonism to the Settlement. Plaintiff approves of its terms, as do proposed Class Counsel,

16

based on her experience litigating data breach and other class actions. The Settlement's valuable relief to Settlement Class Members, makes it fair, reasonable, adequate, and worthy of Preliminary Approval. Van Note Decl. ¶¶ 14-19.

Thus, these additional *Reed* factors weigh in favor of approving the proposed Settlement. Accordingly, the Court should grant Preliminary Approval.

### C.     The Proposed Settlement Administrator will Provide Adequate Notice.

Rule 23(e)(1) requires "direct reasonable notice to all class members who would be bound by" a proposed Settlement. For a Rule 23(b)(3) class, notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). It is that which "is reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950).

The proposed Notice Program is designed to satisfy Rule 23(c)(2)(B) and the *Manual for Complex Litigation*. *See* Agreement, Ex. 1–4. Direct and individual notice via email or first-class mail to each Settlement Class member will occur. Van Note Decl. ¶ 20. If Email Notice is returned undeliverable, a Postcard Notice will be sent. If a Postcard Notice is undeliverable, the Settlement Administrator will research a better address and re-send Notice. *Id.* ¶ 21. The Long Form Notice will also be available to Settlement Class members on the Settlement Website, along with all relevant filings. *Id.* The Settlement Administrator will maintain a toll-free telephone number by which Settlement Class members can seek answers to frequently asked questions or request a Long Form Notice or Claim Form be mailed. *Id.* ¶ 22. A post office box will be maintained to receive Claim Forms, opt-out requests, and objections. *Id.*

17

The Notices are clear and straightforward, defining the Settlement Class and the Settlement's essential terms; clearly describing the options available to the Settlement Class and the deadlines for taking action; disclosing the requested Service Awards for the Class Representatives and the attorneys' fee amount Class Counsel intends to seek and that litigation costs will be sought; explaining the opt-out, objection, and Claim procedures and deadlines; stating the Final Approval Hearing date, time, and location; and prominently displaying Class Counsel's contact information. Agreement, Ex. 1–4. The proposed direct Email Notice or Postcard Notice is the gold standard and is consistent with notice programs approved in this Circuit. *See*, *e.g.*, *Burnett v. CallCore Media, Inc.*, No. 4:21-cv-03176, 2024 WL 3166453, at *3 (S.D. Tex. June 25, 2024) (approving notice plan with postcard and email notice). Accordingly, the Notice Program should be approved. Van Note Decl. ¶¶ 20-26.

## VI. PROPOSED SCHEDULE OF EVENTS AND CONCLUSION

The Court should also set the Final Approval Hearing date and time. Deadlines in the Final Approval process, including the opt-out and objection deadlines, will be determined based on the original Final Approval Hearing date. Plaintiff proposes the following schedule:

| **Notice Program Begins (Email Notice and Postcard Notice Sent)** | 30 days after Preliminary Approval Order |
|---|---|
| **Notice Program Complete** | 45 days before original Final Approval Hearing date |
| **Deadline to file Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards** | 45 days before original Final Approval Hearing date |
| **Opt-Out Deadline** | 45 days before original Final Approval Hearing date |
| **Objection Deadline** | 45 days before original Final Approval Hearing date |
| **Deadline to Respond to Objections** | 15 days before original Final Approval |

|  | Hearing date |
|---|---|
| **Deadline to Submit Claim Forms** | 15 days before original Final Approval Hearing date |
| **Final Approval Hearing** | _____ \_\_, 2025, at \_\_\_\_ am/pm. |

VII.     PROPOSED SCHEDULD OF EVENTS AND CONCLUSION

Plaintiff and Class Counsel respectfully request the Court: (1) grant Preliminary Approval; (2) certify the Settlement Class for settlement purposes; (3) approve the Notice Program, Claim Form and Claims process; (4) appoint Plaintiff as Class Representative and appoint Laura Van Note from Cole & Van Note as Class Counsel; (5) appoint Apex as the Settlement Administrator; (6) stay the Action pending Final Approval; and (7) schedule a Final Approval Hearing.

Dated:  March 11, 2025        By:     */s/ William F. Kendig*
William F. Kendig, Esq. (LA S.B. 17644)
**RICE & KENDIG, LLC**
1030 Kings Highway
Shreveport, LA 71104
Telephone:   (318) 222-2772
Facsimile:    (318) 222-2770
Email:          wfkendig@ricekendig.com

*/s/ Laura Van Note*
Laura Van Note, Esq. (CA S.B. #310160)*
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone:   (510) 891-9800
Facsimile:    (510) 891-7030
Email:          lvn@colevannote.com

Attorneys for Representative Plaintiff and the Plaintiff Class

*application for admission pro hac vice forthcoming*

## **CERTIFICATE OF SERVICE**

I hereby certify that a copy of the foregoing Motion was served on all counsel of record on March 11, 2025 via CM/ECF, in accordance with LR5.3 and Fed. R. Civ. P. 5(b).

>                         */s/ William F. Kendig*
>                         William F. Kendig, Esq.